UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-12508-GAO

SHANE BESTER,
Plaintiff,

v.

KELLY RYAN,
Defendant.

ORDER ADOPTING REPORT AND RECOMMENDATION
October 19, 2016

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has recommended that Bester's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied. Bester has filed an objection to the Report and Recommendation ("R&R"). After carefully reviewing the pleadings, the parties' submissions, the R&R, and the objection to the R&R made by Bester, I agree with the magistrate judge's analysis and conclusions. The case Bester most relies on in his objection, Shepard v. United States, 290 U.S. 96 (1933), was a case about federal evidentiary rules, not about a constitutional rule applying the Sixth Amendment's Confrontation Clause, and it provides no support for his petition. For the reasons given in the R&R, the state court decision at issue was neither contrary to nor an unreasonable application of clearly established federal law as articulated by the United States Supreme Court.

Accordingly, I ADOPT the magistrate judge's recommendation. The Petition (dkt. no. 1) for Writ of Habeas Corpus is DENIED.

Because Bester has not made "a substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHANE BESTER,
    Petitioner,

    v.                                  CIVIL ACTION NO.
                                        13-12508-GAO

KELLY RYAN,
    Respondent.

**REPORT AND RECOMMENDATION RE:**
**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PETITION FOR WRIT OF HABEAS CORPUS**
**(DOCKET ENTRY # 27)**

**March 29, 2016**

**BOWLER, U.S.M.J.**

    Respondent Kelly Ryan ("respondent") seeks to dismiss the above styled petition for writ of habeas corpus filed under 28 U.S.C. § 2254 ("section 2254"). (Docket Entry # 27). Petitioner Shane Bester ("petitioner"), an inmate at the Massachusetts Correctional Institution in Shirley, Massachusetts, attacks a June 2010 conviction rendered in the Massachusetts Superior Court Department (Plymouth County) ("the trial court") by a jury for second degree murder and carrying a firearm without a license. Thereafter, an associate justice of the trial court ("the trial judge") adjudicated petitioner guilty of a firearms offense for having previously been convicted of three violent crimes or serious drug offenses under Massachusetts General Laws chapter 266, section 10G ("section 10G").

    Petitioner seeks habeas relief on the following ground:

"'That the judge violated the defendant's rights to confrontation by admitting into evidence a murder victim's hearsay out-of-court statement under the state of mind exception to the hearsay rule.'"[1] (Docket Entry # 21) (quoting petitioner's supporting memorandum). Respondent maintains that the rejection of the ground by the state courts was not contrary to or an unreasonable application of clearly established law as determined by the Supreme Court under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1).

There is no indication that petitioner seeks an evidentiary hearing. Even if he did, a hearing is not warranted. Before allowing an evidentiary hearing, a federal "habeas judge 'must first consider whether such [a] hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.'" Companonio v. O'Brien, 672 F.3d 101, 112 (1st Cir. 2012) (quoting Teti v. Bender, 507 F.3d 50, 62 (1st Cir. 2007)). The petitioner

---

[1] This ground corresponds to the first ground of relief in the petition in which petitioner states that the admission into evidence over his objection of "the murder victim's previous statements" violated his right to confrontation under the "Sixth and Fourteenth [A]mendments." (Docket Entry # 1, ¶ 12). Respondent moved to dismiss ground two due to a failure to exhaust state court remedies and petitioner thereafter clarified that he seeks relief only on the above ground. Finally, as explained infra, a liberal construction of the petition leads to the conclusion that petitioner bases the Confrontation Clause ground for relief on the admission into evidence of three statements.

2

"must therefore demonstrate that his allegations would entitle him to relief and that the hearing is likely to elicit the factual support for those allegations."   Id.

Here, the record before the state courts, which includes the trial transcripts setting out the admission into evidence of the victim's statements through the testimony of trial witnesses, is complete.  Moreover, petitioner fails to articulate or posit facts that the state court record did not include and that, if elicited at an evidentiary hearing, would provide support for the Confrontation Clause ground for relief.

PROCEDURAL BACKGROUND

On June 17, 2010, the jury found petitioner guilty of second degree murder in violation of section one of Massachusetts General Laws chapter 265 and carrying a firearm without a license in violation of section 10(a) of Massachusetts General Laws chapter 269.  (S.A. 10, 13, 1591-1592).[2]  On the same day in a jury waived trial, the trial judge found petitioner guilty of the section 10G firearms offense.  (S.A. 10, 11, 13, 1634).  The trial judge sentenced petitioner to life imprisonment on the murder conviction and a concurrent 18 to 20 year sentence on the two firearms convictions.  (S.A. 11, 136, 1641-1642).

Petitioner filed a timely appeal in which he unequivocally

_____

[2]  "S.A." refers to a supplemental answer containing the state court record filed by respondent.  (Docket Entry # 23).

3

raised the Confrontation Clause claim set out in the petition.[3]
(S.A. 20, 23, 35, 45-46).  Petitioner also raised a claim that
admission of the victim's out-of-court statements, which were
neither probative of the victim's state of mind or motive,
violated Massachusetts hearsay law.  (S.A. 11, 12, 14, 23, 35-46,
113-115).  Petitioner's brief to the Massachusetts Appeals Court
("the appeals court") based the Confrontation Clause claim on the
admission into evidence of three purportedly hearsay statements
by the victim admitted into evidence through the testimony of
Jose DeMiranda ("DeMiranda") and Heriberto Borrero ("Borrero").
(S.A. 36).  The appeals court portrayed the statements as
follows:

> Statement no. 1:  Jose DeMiranda testified that "[the
> victim] told me that there is the guy in the liquor store
> that stabbed him before.  [The victim] told me, oh, wait for
> me.  I'm going to go talk to him real quick . . . . [The
> victim] went to talk to the person that he said stabbed him
> before."[4]

---

[3] To support the claim, he cited both Crawford v.
Washington, 541 U.S. 36, 50-69 (2004), and Davis v. Washington,
547 U.S. 813, 821-834 (2006).  (S.A. 36-37, 45).

[4] On direct examination, the trial judge gave a cautionary
instruction immediately after the jury heard DeMiranda's
testimony.  He explained that the Commonwealth was not arguing
that there was any truth to the:

> allegation by the alleged victim, that [petitioner] had
> stabbed him before in the past, or was somehow involved in a
> stabbing of [the victim] in the past.  It is being offered .
> . . for the very limited purpose of demonstrating the
> alleged victim's state of mind and a possible motive in this
> case.

4

Statement no. 2:   Jose DeMiranda testified that he overheard the victim say to the defendant that he had stabbed him before and that the defendant responded that he was not the person that stabbed the victim.[5]

Statement no. 3:   Heriberto Borrero testified that the "[victim] told me that was the guy that was—he was with a group of guys that had stabbed [the victim].   And he was one of the guys that was holding [the victim] down."[6]

Commonwealth v. Bester, 2012 WL 2463965, at *1 n.1 (Mass.App.Ct.

June 29, 2012).

Petitioner relies on the same statements as the underlying

basis for the Confrontation Clause ground for relief in the

petition.   As set forth in the petition's supporting memorandum,

petitioner argues that the victim's out-of-court statements that

---

(S.A. 109).   The trial judge repeated the cautionary instruction when, a short time later, DeMiranda testified that the victim told petitioner "that he stabbed him before."   (S.A. 748).

[5]   On direct examination, DeMiranda testified as follows:

Q.   What did [the victim] say to the defendant?
A.   He told him that he stabbed him before.

(S.A. 748).   At this point, the trial judge interrupted the testimony and repeated the cautionary instruction that the jury should use the testimony for the limited purpose of the victim's state of mind and the alleged motive.   The testimony then continued as follows:

Q.   Did the defendant say anything back to [the victim] when [the victim] said to the defendant that he stabbed him?
A.   He said, I'm not the person that stabbed you before.

(S.A. 749).

[6]   The trial court again instructed the jury to consider the above statement for "the very limited purpose to demonstrate, if you accept it, the victim's state of mind or a possible motive in this case."   (S.A. 853-54).

5

petitioner stabbed the victim "before" or was "one of the guys
holding him down when he was stabbed" reflect past events
"inadmissable as probative of his state of mind" and not
probative of any motive.  (Docket Entry # 20, p. 15).  Liberally
construing the pro se petition, it therefore articulates all
three statements as the basis for the Confrontation Clause ground
for relief.

On direct appeal, the appeals court sustained the trial
court's rulings and affirmed the judgment on June 29, 2012.
Commonwealth v. Bester, 2012 WL 2463965 (Mass.App.Ct. June 29,
2012); (S.A. 132-134).  The decision primarily addressed the
admission into evidence of the victim's statements under the
state of mind exception to the Massachusetts hearsay rule and to
show motive.  Id.  In a footnote, the decision addressed and
rejected the merits of the Confrontation Clause claim.  Id., 2012
WL 2463965, at *1 n.2 ("[b]ecause we conclude that the challenged
out-of-court statements were not testimonial in character, we
reject the defendant's confrontation clause argument").

On July 9, 2012, petitioner filed an application for further
appellate review ("ALOFAR") in Massachusetts Supreme Judicial
Court ("SJC") raising the Confrontation Clause claim.  (S.A. 16,
123, 130-131).  On August 3, 2012, the SJC summarily denied the
ALOFAR.  (S.A. 135).

On August 29, 2012, petitioner filed a pro se motion for a

6

new trial under Mass.R.Crim.P. 30 ("Rule 30") arguing that a recent Supreme Court opinion, <u>Williams v. Illinois</u>, 132 S.Ct. 2221 (2012), warranted reviewing the Confrontation Clause claim. (S.A. 136-137). In a Memorandum and Order, the trial court addressed and denied the Confrontation Clause claim. (S.A. 137-138).

The appeals court affirmed the denial of the Rule 30 motion. The opinion noted that petitioner "argues, *again*, that his right to confront witnesses, guaranteed by the United States Constitution's Sixth Amendment confrontation clause, was violated . . .." <u>Commonwealth v. Bester</u>, 2014 WL 812819, at *1 (Mass.App.Ct. 2014) (emphasis added); (S.A. 213). The appeals court docket fails to reflect that petitioner filed for further review with the SJC.

<u>FACTUAL BACKGROUND</u>[7]

The convictions arise out of an incident that took place on January 8, 2008, at a liquor store in Brockton, Massachusetts. At around 9:15 p.m., petitioner, a regular customer, walked into the store, removed a bottle of Hennessey from a shelf and proceeded to the checkout counter. Adam Smalley ("Smalley") and John Rysinger ("Rysinger") were working at the store that evening. Smalley knew petitioner from high school and began to

---

[7] Citations to the trial transcripts are provided only for direct quotations.

assist him at the counter.  Petitioner "was about $10 short" and, as a result, did not complete the purchase.  (S.A. 532, 647).

During this time period, the victim, a regular customer at the store, walked through the door with two companions, DeMiranda and Borrero.  As noted above, at trial, DeMiranda testified that, as they were walking into the store, the victim saw a person inside the store that he recognized and told DeMiranda "that there is the guy in the liquor store that stabbed [me] before" and had DeMiranda "wait at the door" while he went to talk to the person.  (S.A. 738).  Also at trial, Borrero testified that when they walked into the liquor store, the victim told him to get the beer and that "was the guy that was--he was the guy with a group of guys that stabbed [the victim].  And he was one of the guys that was holding [the victim] down."  (S.A. 852-853).  Borrero went to the back of the store to get the beer and the victim walked to the cash register and spoke with petitioner for "about five minutes," according to Borrero.

Smalley testified that when the victim walked in the door with his two companions, the victim went the back of the store where the beers were located while his two companions, i.e., Borrero and DeMiranda, stayed "right outside the doorway."  (S.A. 647-649).  Smalley also described that when the victim walked down the aisle towards the checkout counters, petitioner "started to proceed outside" and the two met, at which point the victim

8

asked petitioner if he could speak with him outside.[8]  (S.A. 649-651).  Over petitioner's objection, Smalley testified that, after petitioner responded, the victim told petitioner, "No, nothing like that" or "It's not like that."  (S.A. 653-654).  Petitioner then went outside and "and stood in front of the front door."  (S.A. 654).  Meanwhile, the victim completed his purchase of two beers and left the store with his two companions.  (S.A. 541, 654).

When petitioner and the victim were outside, DeMiranda heard the victim tell petitioner that he had "stabbed him before."[9]  (S.A. 748).  DeMiranda testified that he heard petitioner reply he was "not the person that stabbed you before," at which point, the victim responded that he knew it "was you and your friends that did it."  (S.A. 749-751).  DeMiranda estimated that he was 20 feet away from petitioner and the victim when he overheard these statements.  DeMiranda described the tone of voice of petitioner and the victim as "loud but not yelling."  (S.A. 751).

---

[8]  Specifically, over petitioner's objection, Smalley testified that he heard the victim say to petitioner, "Can I holler at you outside?"  (S.A. 650).  Rysinger likewise testified, over petitioner's objection, to hearing the victim say to petitioner, "Let me holler at you."  (S.A. 533).  Smalley explained that the term "holler" simply means "speak," such as "Can I speak to you outside."  (S.A. 651).

[9]  See footnote five and related text.  Petitioner asserts that use of the word "before" shows that the statement was about a past event and does not fall under the state of mind exception to the hearsay rule.  (Docket Entry # 20, p. 15).

9

DeMiranda further testified that he moved closer towards petitioner and the victim whereupon he heard petitioner tell the victim to have DeMiranda back away. DeMiranda then backed up to where he was approximately ten feet away from petitioner and the victim.

DeMiranda then described that petitioner and the victim continued to talk. With petitioner facing in DeMiranda's direction, DeMiranda described petitioner as "looking mad." (S.A. 756). DeMiranda then observed that petitioner "pulled out a gun and started shooting" the victim from a distance of "about five feet." (S.A. 757, 759). Hearing the gunshots, DeMiranda immediately ran away because he "was in shock." (S.A. 131).

Meanwhile, before the shooting, Smalley, who was observing petitioner and the victim through a store window, described petitioner as having "some anger" towards the victim. (S.A. 659). According to Smalley, he saw DeMiranda and Borrero walk towards petitioner and that petitioner put his hand up as if to indicate "back off." (S.A. 661-662). DeMiranda and Borrero then "moved back towards the front of the store," according to Smalley (S.A. 663). At the same time, petitioner and the victim moved away from the window out of Smalley's view.

Rysinger saw petitioner and the victim walk past one the store windows and thereafter was not "able to see anything else." (S.A. 554). Rysinger then turned his attention to helping

10

customers at the one of the cash registers.  (S.A. 557).
Thereafter, he heard gunshots and "hit the ground."  (S.A. 558).
Smalley "took cover" and store customers "ducked behind the
counter."  (S.A. 557-558, 666).  When the shots ended, Smalley
telephoned 911.

Rysinger and Smalley next saw the victim "crab walking" or
"on his rear and on his hands" moving towards the store.  (S.A.
559, 667).  When he came to the door, Rysinger held the door open
and the victim "kind of crab walked" into the store.  (S.A. 561,
566).  Police officers arrived at the scene and emergency medical
technicians ("EMTs") arrived thereafter.  (S.A. 567-568, 710).
The EMTs tried unsuccessfully to revive the victim, who had lost
consciousness, and then took him away in an ambulance.

Earlier in the evening, petitioner's girlfriend received a
telephone call at her home from petitioner asking her to bring
some money so he could make a purchase at the liquor store.  When
she arrived, she got out of her car and stood in front of the
store for approximately five minutes before petitioner came out
of the store.  She also noticed three other men leave the store.
After she spoke with petitioner for "[a] couple of minutes,"
petitioner walked away and had an "exchange of words" with one of
the three men.  (S.A. 1101).  As the exchange continued,
petitioner's girlfriend heard the other man say in a loud voice
"something along the lines of, 'If that's your boy, I'll kill you

11

too.'" (S.A. 1116-1117) (single quotation marks added). She

then heard gunshots. Looking back, she saw petitioner standing

with a gun in his hand and the other man on the ground. She then

saw petitioner run away and, after a few seconds, she got in her

car and left the scene. Driving down a nearby street, she saw

petitioner and stopped while petitioner got into the car. She

did not see the gun in his hand and dropped him off "[a] couple

minutes" later in Brockton. (S.A. 1155-1157).

Later that evening, she drove petitioner to South Station.

Petitioner was apprehended a few days later in Florida.

On direct appeal, the appeals court described the evidence

as follows:

> While the Commonwealth's case was largely circumstantial, it
> presented overwhelming evidence that the defendant
> participated in the victim's death, including the
> defendant's argument with the victim, the proximity of the
> defendant and victim to others, eyewitness testimony to
> seeing the defendant pull out a gun and shoot the victim,
> the defendant's girlfriend's observation of a gun in his
> hand when the shooting ceased, his mysterious disappearance
> immediately after the victim was shot, the defendant's
> departure for Florida later the same night, and
> incriminating statements he made to his girlfriend.

Commonwealth v. Bester, 2012 WL 2463965, at *2; (S.A. 133); see

28 U.S.C. § 2254(e)(1).

### DISCUSSION

Respondent moves to dismiss the Confrontation Clause ground

for relief because the state courts' rulings were not contrary to

or an unreasonable application of clearly established Supreme

Court precedent under the AEDPA.  (Docket Entry # 27).
Petitioner maintains that the trial court's decision to admit the
victim's hearsay statements under the state of mind exception or
to show motive violated his rights under the Confrontation
Clause.  (Docket Entry ## 1, 20).

The AEDPA's standard of review applies to state court
decisions adjudicating the merits of the federal claim.  28
U.S.C. ☐ 2254(d); see Lyons v. Brady, 666 F.3d 51, 53-54 (1st
Cir. 2012) (AEDPA's standard of review applies to claims
adjudicated on merits in state court).  The appeals court
decision on direct review rejected petitioner's Confrontation
Clause claim because the "out-of-court statements were not
testimonial in character."  Commonwealth v. Bester, 2012 WL
2463965, at *1 n.2.  The decision by the appeals court as opposed
to the decision by the SJC denying the ALOFAR is the proper focus
of review.  See Foxworth v. St. Amand, 570 F.3d 414, 425-426 (1st
Cir. 2009) (examining ☐rationale of the intermediate appellate
court where, as here, the state's highest court has summarily
denied further appellate review☐).  The appeals court decision
affirming the denial of the Rule 30 motion likewise addressed the
merits of the Confrontation Clause claim.  It found that:

> the defendant's confrontation rights were not violated for
> two reasons:  first, the challenged out-of-court statements
> were not used for the truth of the matter asserted, rather
> they were used as evidence of the victim's state of mind and
> the defendant's motive, and second, the statements were
> nontestimonial.

Commonwealth v. Bester, 2014 WL 812819, at *1 (emphasis added).

13

Review under the two categories of cases in section 2254(d) is decidedly deferential. See Winfield v. O'Brien, 775 F.3d 1, 8 (1ˢᵗ Cir. 2014) (acknowledging ▯high bar▯ to overturn state court decision under AEDPA). ▯[C]ollateral federal review is limited to determining whether the state courts' decision . . . `was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.'▯ Id. (quoting 28 U.S.C. ▯ 2254(d)(1)) (internal brackets omitted).

Under the first category, ▯A state court determination is `contrary to' clearly established law `if the court ▯'applies a rule that contradicts the governing law set forth' by the Supreme Court or `confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'▯'▯ Linton v. Saba, 812 F.3d 112, 122 (1ˢᵗ Cir. 2016) (quoting Hensley v. Roden, 755 F.3d 724, 730▯731 (1ˢᵗ Cir. 2014)); accord Ramdass v. Angelone, 530 U.S. 156, 165-166 (2000) (decision is contrary to ▯clearly established federal law if it applies a legal rule that contradicts▯ the ▯prior holdings▯ of Supreme Court or ▯reaches a different result from▯ Supreme Court case ▯despite confronting indistinguishable facts▯). Under the second category, the federal court may grant the writ if the relevant state court decision ▯`involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'▯ Williams v. Taylor,

14

529 U.S. 362, 404-405 (2000) (quoting statute with ellipses omitted).

An unreasonable application of clearly established federal law occurs if a state court decision □correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case.□ White v. Woodall, 134 S.Ct. 1697, 1706 (2014); Cullen v. Pinholster, 131 S.Ct. 1388, 1399 (2011). A state court does not unreasonably apply clearly established Supreme Court law by simply refusing to extend it "'"to a context in which the principle should have controlled."'" White v. Woodall, 134 S.Ct. at 1705 (internal ellipses omitted). In order to obtain federal habeas relief, □`a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'□ Id. at 1702 (quoting Harrington v. Richter, 131 S.Ct. at 786-787). Habeas relief under section 2254(d)(1) is available □if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no `fairminded disagreement' on the question.□ Id. at 1706-1707; see Linton v. Saba, 812 F.3d at 122-123 (□state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision□)□(internal quotation marks and brackets omitted).

15

An objectively unreasonable application of the relevant jurisprudence differs from an incorrect or erroneous application of such jurisprudence. <u>Williams v. Taylor</u>, 529 U.S. at 411; <u>accord Wiggins v. Smith</u>, 539 U.S. 510, 520-521 (2003) ("state court's decision must have been more than incorrect or erroneous"). Under the unreasonable application prong, the "habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams v. Taylor</u>, 529 U.S. at 411; <u>accord Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007) ("question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold").

[C]learly established Federal law . . . includes only the holdings, as opposed to the dicta, of Supreme Court decisions at the time of the state court decision. <u>White v. Woodall</u>, 134 S.Ct. at 1702 (internal brackets and quotations marks omitted); <u>Yeboah-Sefah v. Ficco</u>, 556 F.3d 53, 65 (1st Cir. 2009) (clearly established federal law refers to `holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision') (internal brackets omitted). [C]ircuit precedent does not constitute `clearly established Federal law, as determined by the Supreme Court,' <u>Parker v.</u>

16

Matthews, 132 S.Ct. 2148, 2155 (2012), and □diverging approaches□ to an issue in courts of appeals may □illustrate the possibility of fairminded disagreement.□ White v. Woodall, 134 S.Ct. at 1703 n.3. □[F]actually similar cases from the lower federal courts may□ nonetheless may inform a determination particularly □when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns.□ Rashad v. Walsh, 300 F.3d 27, 35 (1ˢᵗ Cir. 2002).

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986); Davis v. Alaska, 415 U.S. 308, 315 (1974) (Confrontation Clause guarantees defendant's right to confront the witnesses against him). The Supreme Court decision in Crawford v. Washington, 541 U.S. 36 (2004), □sets forth the relevant clearly established federal law regarding□ the Confrontation Clause claim. Linton v. Saba, 812 F.3d at 120. The holding in Crawford □bars the admission of 'testimonial statements of witnesses absent from trial' unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.□ Id. (emphasis added); accord Williams v. Illinois, 132 S.Ct. 2221, 2232 (2012) (Crawford holds □that '[t]estimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine'□).

Simply stated, □The Confrontation Clause 'applies only to

17

testimonial hearsay.'□  Linton v. Saba, 812 F.3d at 120 (quoting
Davis v. Alaska, 547 U.S. at 823).  □The `threshold question' in
these types of claims,□ therefore, is □`whether the challenged
statement is testimonial.'□  Hensley v. Roden, 755 F.3d 724, 732
(1ˢᵗ Cir. 2014), cert. denied, 135 S.Ct. 964 (2015).  As listed
in Crawford, the various formulations of the □`core class of
□testimonial□ statements'□ consist of:  (1) □`ex parte in-court
testimony or its functional equivalent'□; (2) □`extrajudicial
statements contained in formalized testimonial materials, such as
affidavits, depositions, prior testimony, or confessions'□; and
(3) □`statements that were made under circumstances which would
lead an objective witness reasonably to believe that the
statement would be available for use at a later trial.'□  Linton
v. Saba, 812 F.3d at 120 (quoting Crawford v. Washington, 541
U.S. at 51-52) (internal ellipses omitted).

     The appeals court decisions on direct and collateral review
were not contrary to this clearly established law.  Both
decisions recognized the premise that the Confrontation Clause
only applies to testimonial hearsay.  See Commonwealth v. Bester,
2012 WL 2463965, at *1 n.2 (rejecting Confrontation Clause claim
because the "out-of-court statements were not testimonial in
character"); Commonwealth v. Bester, 2014 WL 812819, at *1.  In
fact, the appeals court decision on collateral review set out the
holding in Crawford, i.e., "that a testimonial hearsay statement
by a person who does not testify at trial is inadmissible unless

18

the prosecution establishes unavailability of the declarant and a prior opportunity of the defendant to cross-examine the declarant." Commonwealth v. Bester, 2014 WL 812819, at *1 (citing Crawford, 541 U.S. 36 (2004), and Williams v. Illinois, 132 S.Ct. 2221 (2012)). The Supreme Court has declined to determine whether the kind of statements at issue here, i.e., those "made to someone other than law enforcement personnel," are testimonial. Michigan v. Bryant, 562 U.S. 344, 359 n.3 (2011) ("Davis explicitly reserved the question of 'whether and when statements made to someone other than law enforcement personnel are "testimonial"'" and refusing the address the issue "in this case" because the declarant's "statements were made to police officers").

It is also worth noting that Crawford operates at a high level of generality. See Crawford v. Washington, 541 U.S. at 68 (leaving "for another day any effort to spell out a comprehensive definition of 'testimonial'"); Linton v. Saba, 812 F.3d at 120 (SJC's decision determining whether out-of-court statement was testimonial given "special 'leeway' . . . as it was applying a rule that was neither fully defined in its meaning nor exhaustive in its scope") (quoting Crawford v. Washington, 541 U.S. at 68, in parenthetical). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); Linton v. Saba,

19

812 F.3d at 120 (citing <u>Yarborough v. Alvarado</u>, 541 U.S. at 664).

The out-of-court statements at issue here concern statements made by an individual to another individual outside the context of police interrogation.  The overheard statements were not made to law enforcement personnel or otherwise "'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'☐ <u>Linton v. Saba</u>, 812 F.3d at 120.  As articulated in the collection of cases by the district court in <u>Linton</u>, the trend of circuit courts of appeal is that statements made to non-law enforcement personnel are not testimonial.  <u>See</u> <u>Linton v. Saba</u>, 2014 WL 4804746, at *5 (D.Mass. Sept. 25, 2014) (collecting cases from First, Sixth, Eighth and Ninth Circuits), <u>aff'd</u>, 812 F.3d 112 (1ˢᵗ Cir. 2016).  Moreover, dicta in <u>Crawford</u> distinguishes between ex parte examinations presumably subject to the Confrontation Clause and ☐off-hand, overheard remark[s]☐ that ☐bear[] little resemblance to the civil-law abuses the Confrontation Clause targeted.☐  <u>Crawford v. Washington</u>, 541 U.S. at 51.  Thus, far from being an unreasonable application of clearly established Supreme Court law under <u>Crawford</u>, the decisions by the appeals courts rejecting the Confrontation Clause claim given the non-testimonial statements at issue are reasonable applications of such law.  Having determined the appeals courts' decisions were neither contrary to nor an unreasonable application of clearly established Supreme Court

law, it is not necessary to address respondent's harmless error argument.

As a final matter, section 2254(a) limits federal habeas relief to state convictions "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); <u>see</u> 28 U.S.C. § 2241(c); <u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 861 (2011) ("'"federal habeas corpus relief does not lie for errors of state law"'"); <u>Brown v. O'Brien</u>, 666 F.3d 818, 824 (1st Cir. 2012) ("[o]rdinarily, errors of state law are not the basis for federal habeas relief").  Accordingly, whether the admission into evidence of the victim's three out-of-court statements recited by DeMiranda and Borrero violated the Massachusetts hearsay rule because they looked to the past or did not involve motive is a matter of state law.  As correctly pointed out by respondent, such state law determinations are not subject to federal habeas review.  <u>See</u>, <u>e.g.</u>, <u>Williams v. Illinois</u>, 132 S.Ct. at 2238 ([]question before us is whether petitioner's Sixth Amendment confrontation right was violated, not whether the State offered sufficient foundational evidence to support the admission of Lambatos' opinion about the DNA match[] and stating that, []We cannot review that interpretation and application of Illinois law[]).

CONCLUSION

In accordance with the foregoing discussion, this court

21

**RECOMMENDS**[10] that respondent's request to dismiss the petition (Docket Entry # 27, p. 16) be **ALLOWED** and that the petition be dismissed with prejudice.

         /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[10] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. See Rule 72(b), Fed. R. Civ. P. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.